**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**MARK A. DIFABIO**,

Plaintiff,

v.

**CAROLYN W. COLVIN**, Acting Commissioner of Social Security,

Defendant.

Case No. 3:15-cv-1018-SI

**OPINION AND ORDER**

Tim Wilborn, WILBORN LAW OFFICE, P.C., P.O. Box 370578, Las Vegas, NV 89137. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Herbert, Assistant United States Attorney, U.S. ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Thomas M. Elsberry, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 Mailstop 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Mark A. Difabio ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the following reasons, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for DIB on November 17, 2011, alleging disability beginning June 16, 2007. AR 199. He was 54 years old at the alleged disability onset date, and is currently 63 years old. *Id.* He alleges disability due to the following medical

conditions: heart disease, back and hip pain, hernia, fatigue, and muscle pain. AR 99. The Commissioner denied his application initially on February 2, 2012 and upon reconsideration on May 3, 2012. AR 97-98. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 133. Plaintiff appeared for hearings on April 24, 2013, and August 9, 2013, and was represented by counsel. AR 15. At the first hearing, the ALJ heard testimony from Plaintiff and vocational expert ("VE") Paul K. Morrison. AR 59-96. At the second hearing, the ALJ heard testimony from Plaintiff. AR 27-58. After considering all the evidence in the record, the ALJ concluded that Plaintiff is not disabled under the Social Security Act. AR 22.

Plaintiff petitioned the Appeals Council for review of the ALJ's decision. AR 10-11. On April 6, 2015, the Appeals council denied the request for review, rendering the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now seeks review of the ALJ's decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ began his opinion by noting that Plaintiff met the insured status requirements of the Social Security Act during two separate periods. AR 15. The first period began on April 1, 2007, and ended on March 31, 2011. *Id.* The second period began on July 1, 2012 and ended on September 30, 2014. *Id.* The ALJ then applied the sequential process for each insured period. AR 17-22. Plaintiff, however, only contests the ALJ's decision regarding the first insured period. Thus, the Court's discussion is limited to the first insured period.

At step one for the first period of coverage, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after June 16, 2007, the alleged onset date. AR 17. At step two, the ALJ determined that Plaintiff had a severe impairment as a result of his acute inferior myocardial infarction. *Id.* The ALJ determined that Plaintiff's other symptoms and complaints were transient. AR 18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ next found that Plaintiff had the RFC to perform light work, with some limitations. *Id.* The ALJ concluded that Plaintiff could stoop, kneel, crouch, and crawl occasionally, but that he was not to climb ladders, ropes, or scaffolds. *Id.* In making this determination, the ALJ concluded that Plaintiff's testimony was not entirely credible in light of the evidence from Dr. Ronald Petersen, M.D., and Plaintiff's work history. AR 19.

At step four, the ALJ found that Plaintiff was able to perform his past relevant work in advertising sales, as an estimator, or as vice president of sales. AR 21. Accordingly, the ALJ found Plaintiff was not disabled during the first insured period. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) failing to find that Plaintiff's hip and back complaints were severe impairments at step two of the sequential analysis; (B) improperly rejecting testimony from Plaintiff and his chiropractor, Dr. Cory Ann Imhof, D.C.; and (C) reaching a conclusion at step four of the sequential analysis that was not supported by substantial evidence.

### A. Severe Impairments at Step Two of the Sequential Analysis

At step two, the ALJ noted that Plaintiff's impairments, other than status post myocardial infarction, "[are] not . . . severe medically determinable impairment[s] because no objective, acceptable medical documentation supports such a finding . . . the objective evidence regarding the claimant's hip, knee and back conditions [began] in 2012, well after the first date last insured." AR 18. Under step two of the sequential analysis, a claimant bears the burden of proof that he has a severe medically determinable physical impairment. *See Bustamante*, 262 F.3d at

953 (holding that the claimant bears the burden of proof through the first four steps of the sequential process). The claimant must present "evidence from acceptable medical sources to establish whether [the claimant has] a medically determinable impairment(s)." 20 C.F.R. § 404.1513. The claimant must present "complete and detailed objective medical reports of his or her condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (quotation marks omitted).

A claimant's reported pain and symptoms alone are not enough to establish a "medically determinable" impairment: "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms." 20 C.F.R. § 404.1508. Symptoms are the patient's "own description of [his or her] physical or mental impairment." 20 C.F.R. § 404.1528(a). Signs are "abnormalities which can be observed, apart from your statements (symptoms)[,]" and "must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1528(b). Laboratory findings must be shown by "medically acceptable laboratory diagnostic techniques," such as x-rays. 20 C.F.R. § 404.1528(b)-(c). The ALJ also must evaluate all medical opinions, which are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Under the applicable regulations, only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a); *see also* Social Security Ruling ("SSR") 06–03p, *available at* 2006 WL 2329939 (Aug. 9, 2006) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed

optometrists, licensed podiatrists, and qualified speech pathologists). Other health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician assistants, naturopaths, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d).

**1. The ALJ's Step Two Analysis**

Although Plaintiff sought treatment for pain in his hip and back before his last insured date, the earliest diagnostic medical record relating to Plaintiff's hip and back conditions is the x-ray report dated October 16, 2012, about one and one-half years after the relevant date last insured. AR 392. That x-ray report, by Dr. Allen F. Avbel, M.D., noted "marked" degeneration in Plaintiff's left hip joint, and calcification or ossification of ligaments in Plaintiff's lower back. *Id.* On December 27, 2012, Dr. Bret H. Dales examined Plaintiff and noted that Plaintiff's October x-rays showed "severe end-stage arthritis of the left hip" and the "lower lumbar spine shows considerable degeneration with disc space narrowing . . . ." AR 395-96. Plaintiff received a corticosteroid injection to the left hip from on January 16, 2013, AR 524, and underwent total hip replacement surgery for his left hip on March 4, 2013, AR 529-31. The ALJ concluded at step two of the sequential analysis that Plaintiff did not have severe impairments related to his hip, knee, or back conditions because these medical records were dated after the relevant date last insured (March 31, 2011). AR 18.

The Commissioner argues that the lack of objective medical evidence to establish Plaintiff's impairment during his insurance coverage requires the rejection of his claim, citing *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). In *Ukolov*, the plaintiff submitted medical records from two neurologists. *Id.* at 1005-06. The first neurologist noted that there was

"insufficient evidence to make a diagnosis," and the records of the second neurologist did not contain a diagnosis or a finding of impairment. *Id.* Furthermore, the Ninth Circuit explained that the neurological examination method used by the second neurologist "is susceptible to subject manipulation." *Id.* at 1006. The Ninth Circuit held that a single positive result of a non-objective diagnostic technique that is "unaccompanied by a diagnosis or finding of impairment, does not and cannot establish the existence of a disability." *Id.* Unlike the claimant in *Ukolov*, whose medical opinions failed to include "a finding of impairment, a diagnosis, or objective test results," Plaintiff has introduced evidence from an objective diagnostic technique (x-ray) and a diagnosis from acceptable medical sources (Drs. Avbel and Dales) that show that Plaintiff suffered from a medically determinable impairment. *See id.* (contrasting the non-objective diagnostic technique used in *Ukolov* with objective diagnostic tests such as blood pressure screening, electrocardiograms, and computer axial tomography scans).

The ALJ determined that the evidence Plaintiff submitted from Drs. Avbel and Dales was not relevant because it was from after the last insured date. The ALJ provided no reason to discount the x-ray report or the records from Dr. Dales, other than that they did not appear in the record until after the date last insured. AR 18. The Ninth Circuit, however, has held that "[m]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir. 1996) (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). "In fact, it is not uncommon that a physician's examination completed two or more years after the insured status expiration date is considered relevant." *Barnard v. Comm'r of Soc. Sec. Admin.*, 286 F. App'x 989, 994 (9th Cir. 2008); *see also McCartey v. Massanari*, 298 F.3d 1072, 1077 n.7 (9th Cir. 2002) (finding that the Appeals Council erred in determining that medical records after the

date last insured were immaterial because they were probative of the fact that the claimant was disabled before the date last insured).

Here, there is objective medical evidence of severe *end-stage* arthritis and *considerable* degeneration of the lower lumbar spine less than two years after the date last insured. The ALJ therefore erred in summarily concluding that this medical evidence was not "relevant to an evaluation of the pre-expiration condition." *Sampson*, 103 F.3d at 922 (quotation marks omitted). Because the reports from Drs. Avbel and Dales, although dated after the date last insured, demonstrate impairments at an end stage, they may well be evidence of Plaintiff's condition before the last insured date. The ALJ erred by not considering when these significant impairments began, and substantial evidence does not support the ALJ's conclusion that Plaintiff did not have a significant impairment relating to his back or hips before the date last insured. *See Smith*, 849 F.2d at 1226 (finding that the ALJ's conclusion was not supported by substantial evidence when the ALJ failed to consider, as evidence of the claimant's condition before the last insured date, reports from doctors after that date).

**2. Harmless Error**

The Court finds that the ALJ erred at step two by failing properly to consider whether Plaintiff had additional severe impairments relating to his back and hips. "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue,* 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007)). In *Lewis,* the ALJ failed to consider one of the plaintiff's medical conditions at step two of the sequential analysis. *Lewis*, 498 F.3d at 911. Nevertheless, the ALJ considered the effect of the impairment at step four of the sequential analysis. *Id.* ("The decision reflects that the ALJ considered any limitations posed by the [impairment] at Step 4."). Likewise, in the present case, the ALJ considered the evidence

pertaining to Plaintiff's hip and back impairments and included limitations from those impairments in the RFC. AR 20 ("The light [RFC] accounts for the claimant's cardiac condition, with postural limitations that anticipate the development of hip and back problems after March 31, 2011."). The Court thus finds that the ALJ's error at step two was harmless. *See Lewis*, 498 F.3d at 911 ("As such, any error that the ALJ made in failing to include the [impairment] at Step 2 was harmless.").

**B. ALJ's Credibility Determinations**

Plaintiff next argues that the ALJ erred by improperly rejecting testimony from Plaintiff and his chiropractor, Dr. Imhof.

**1. Plaintiff's Credibility**

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

An ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 16-3p, *available at* 2016 WL 1119029. An ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

At the first step of the credibility framework, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms . . . ." AR 19. At the second step, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." *Id.* The ALJ offered three reasons for his adverse credibility finding: (a) Plaintiff's testimony at the hearings was inconsistent with his own prior statements; (b) Plaintiff's testimony was inconsistent with the medical evidence; and (c) Plaintiff received conservative treatment for his impairment. AR 19-20.

**a. Plaintiff's testimony and prior statements**

In evaluating a claimant's credibility, an ALJ may consider evidence of the claimant making false statements and the claimant's prior inconsistent statements. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008). Indeed, when assessing credibility, an ALJ must consider any "evidence that bears on the consistency and veracity of the claimant's statements." *Petrosino v. Colvin*, 2016 WL 270909, at *2 (D. Or. Jan. 21, 2016).

At the April 24, 2013, hearing Plaintiff testified that he could not work more than 30 hours per week due to physical and mental fatigue. AR 85-86. At the August 9, 2013, hearing Plaintiff testified that he erred in stating that he was working 30 hours a week when he was actually only able to work approximately 20 hours per week. AR 36-37. The ALJ wrote that Plaintiff "testified that he worked up to thirty hours a week as a contractor, primarily arranging bids for his subcontractors because the physical work became too difficult." AR 19. At the April 24, 2013 hearing, the ALJ asked Plaintiff if, in 2008, he "[was] doing any part of the physical part of the job, or was it all being done by sub-contractors?" AR 67. Plaintiff responded that "[i]t was all being done by sub-contractors." *Id.* Plaintiff testified to a similar labor

arrangement in 2009 and 2010. AR 68. Plaintiff next testified that he did not do the physical work of installing floors in 2011 and that he continued to use subcontractors. AR 69.

The ALJ concluded that Plaintiff's testimony that he was not doing any physical labor from 2008 through 2011 was inconsistent with the Work Activity Report dated December 7, 2011, and statements Plaintiff made to Dr. Petersen. AR 19. In December 2011, Plaintiff told a field office representative  complete Plaintiff's Work Activity Report that Plaintiff spent about 16 hours each week doing physical work from 2009 to 2011. AR 299. On April 5, 2011, five days after the last insured date, Plaintiff had an appointment with Dr. Petersen. AR 380. Dr. Petersen wrote in his notes that Plaintiff told him that "[Plaintiff's] job has been quite physical." *Id.* The Court agrees that Plaintiff's testimony at the hearing that all the physical labor associated with installing floors from 2008 through 2011 was performed by subcontractors is inconsistent with Plaintiff's prior statements in which he claimed to be performing physical labor during that same time period.

A material inconsistency in Plaintiff's statements is a clear and convincing reason that is sufficient to support an ALJ's adverse credibility finding. *Tommasetti*, 533 F.3d at 1039-40 (citing *Smolen*, 80 F.3d at 1284). The Court finds that the ALJ has provided a specific and clear and convincing reason to discredit Plaintiff's credibility.

**b. Plaintiff's testimony and the medical evidence**

One of the factors that an ALJ may consider in assessing the credibility of a claimant is "whether the alleged symptoms are consistent with the medical evidence." *Lingenfelter*, 504 F.3d at 1040. In his decision, the ALJ noted that the limitations suggested by Drs. Petersen and Imhof were consistent with Plaintiff's work activity, which the ALJ determined showed fewer limitations than Plaintiff alleged. AR 19-20.

Dr. Petersen commented on Plaintiff's care from December 2006 through April 2011 in a letter dated January 12, 2012. AR 376-77. In that letter, Dr. Petersen noted that Plaintiff had good cardiovascular function, Plaintiff was not limited by chest pain, and a stress test placed Plaintiff at a low risk for cardiac issues. AR 376. Dr. Petersen opined that Plaintiff's cardiac condition would not place any limitation on his ability to work while sitting, but he may not be able to walk and stand for a full eight-hour shift. *Id.* Dr. Petersen also opined that Plaintiff should avoid repeated heavy lifting. *Id.* Dr. Imhof submitted a report dated October 18, 2011, concerning Plaintiff's ability to do work-related activities before his last insured date. AR 370-75. Dr. Imhof indicated that Plaintiff would not experience substantial difficulty with stamina, pain, or fatigue if he was working full-time. AR 370. Although Dr. Imhof noted that it would be reasonable to expect Plaintiff to need to work at a reduced work pace if employed full-time at light or sedentary levels of exertion, Dr. Imhof also noted that Plaintiff's ability to maintain a normal work pace while working full-time was "fair." *Id.*

The limitations Plaintiff described are inconsistent with the medical evidence. The ALJ noted that Plaintiff testified to only being able to work up to 30 hours a week. AR 19. Both of Plaintiff's medical providers indicated that his medical conditions would not prevent Plaintiff from working 40 hours a week. AR 370, 376. The ALJ's conclusion that Plaintiff's reported limitations are not consistent with the medical record is supported by substantial evidence.

**c. Conservative treatment**

The ALJ noted in his decision that Plaintiff received conservative treatment.[1] AR 20. Instead of explaining this conclusion, the ALJ instead summarized Plaintiff's cardiac treatment

[1] Conservative treatment may be defined: "The withholding of treatments and management of disease by observation, or conversely, the use of surgery when observation only would depart from the usual care." *Taber's Cyclopedic Medical Dictionary* 512 (Donald Venes, *et al*., eds., 21st ed. 2009).

history. *Id.* An ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750. Because the ALJ did not explain in what manner Plaintiff's treatment was conservative, or why such a course of treatment undermines Plaintiff's testimony, conservative treatment is not a clear and convincing reason, supported by substantial evidence, to discredit Plaintiff's testimony.

The ALJ, however, provided two other clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's testimony. Therefore, the ALJ's decision regarding conservative treatment is harmless error. The ALJ's overall adverse credibility finding is upheld.

**2. Dr. Cory Ann Imhof, D.C.**

In August 2009, Plaintiff went to the Back Pain & Accident Chiropractic Clinic, LLC in Portland, Oregon, to obtain treatment for pain in his lower back and upper right leg. AR 348. Plaintiff was initially seen by Drs. Donald Ferrante, D.C., and Kelly Yakiwchuk, D.C. AR 356-65. Plaintiff returned for additional treatment in September 2011, and was treated this time by Dr. Imhof. AR 352-55. Plaintiff had at least two appointments with Dr. Imhof, both after Plaintiff's last insured date. AR 350-55, 366-68. Dr. Imhof submitted a report, dated October 18, 2011, concerning Plaintiff's health issues. AR 370-75. The ALJ accorded Dr. Imhof's report little weight. AR 20.

Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it

affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). Because Dr. Imhof is a chiropractor, she is considered an "other" medical source.

To reject the competent testimony of "other" medical sources like Dr. Imhof, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not cite the specific record so long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Plaintiff argues that the ALJ erred by not providing a germane reason for discounting Dr. Imhof's report. The Commissioner responds that the reasons provided by the ALJ were germane. Additionally, the Commissioner argues that if an error was made, it was harmless because there was no diagnosed impairment underlying the symptoms assessed by Dr. Imhof.

The ALJ provided three reasons for why he gave little weight to Dr. Imhof's opinion: (a) the record contradicts the exertional limitations provided by Dr. Imhof; (b) Dr. Imhof's opinion was provided several months after the date last insured; and (c) chiropractors are not acceptable medical sources as defined in 20 C.F.R. § 404.1513. The Commissioner also argues that the Court should infer from the context of the ALJ's reasoning that the ALJ also relied on a contradiction between Plaintiff's cardiologist, Dr. Petersen, and Dr. Imhof as another reason why the ALJ gave little weight to Dr. Imhof's opinion.

**a. Consistency with work history**

Dr. Imhof opined that Plaintiff could, in a competitive work situation, lift and carry up to 20 pounds frequently and 50 pounds occasionally. AR 373. This roughly corresponds to

medium work. *See* 20 C.F.R. § 404.1567 ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). In considering Dr. Imhof's opinion, the ALJ noted that it was inconsistent with Plaintiff's ability to perform *heavy* work. AR 20. The ALJ also noted that Plaintiff testified that the heavy physical aspect of floor installation required the ability to lift up to one-hundred and fifty pounds, which is greater than the lifting limitations opined by Dr. Imhof. AR 19.

The Court has already found that the ALJ provided a clear and convincing reason to discount Plaintiff's testimony that he was not performing *any* physical labor in the period from 2008 through the last insured date. *See supra* Discussion Section B(1)(a). The question here, therefore, is whether the evidence supports the ALJ's inference that Plaintiff was performing some of the "heavy" required labor, which involved lifting up to one-hundred and fifty pounds in March 2011, after the onset date opined by Dr. Imhof.

On or about December 7, 2011, Plaintiff told a field office representative that Plaintiff spent approximately 16 hours a week doing physical work from 2009 through 2011. AR 299. The field office representative then completed a portion of the Work Activity Report. On the portion of the Work Activity Report that Plaintiff completed on November 22, 2011, Plaintiff reported earning approximately $700 per month in every month of 2011. AR 296. Further, on April 5, 2011, five days after the last insured date, Plaintiff told Dr. Petersen that "[Plaintiff's] job has been quite physical." AR 380. The Court finds that the ALJ's conclusion that Plaintiff was lifting up to one-hundred and fifty pounds in March 2011 is a reasonable inference from the evidence. *See Tommasetti*, 533 F.3d at 1040 (noting that "we cannot say that the ALJ's inference regarding [claimant] . . . was unreasonable" (citing *Sample*, 694 F.2d at 642) (noting that an ALJ may "draw inferences logically flowing from the evidence"). Although there may be other

reasonable interpretations of the evidence, the Court cannot say that the ALJ's conclusion is irrational, and thus the ALJ's conclusion must be upheld. *Burch*, 400 F.3d at 679; *see also Batson*, 359 F.3d at 1193, 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). The limitations opined to by Dr. Imhof are inconsistent with the ALJ's conclusion that Plaintiff was performing much heavier lifting after the date of onset provided by Dr. Imhof. This is a germane reason to discount the opinion of Dr. Imhof.

**b. Relevant time period**

The ALJ also concluded that Dr. Imhof's opinion was entitled to little weight because it was provided after the last insured date. AR 20. The Commissioner argues that Dr. Imhof's opinion does not concern Plaintiff's condition before the last insured date. The fact that a medical opinion is rendered after the last insured date is not a valid reason, in and of itself, to reject the opinion. *Sampson*, 103 F.3d at 922; *see supra* Discussion Section A. Furthermore, Dr. Imhof reported that the onset date of Plaintiff's impairment was in March 2011. AR 366. Thus, Dr. Imhof's opinion applies to a time before the last insured date. On this issue, the ALJ did not provide a germane reason to discount Dr. Imhof's opinion.

**c. Other medical source**

The ALJ's comment that chiropractors are not acceptable medical sources as defined in 20 C.F.R. § 404.1513 is simply a restatement of what types of sources the regulations permit to be used to establish the existence of an impairment. Section 404.1513 also sets the degree of deference to be accorded to the opinions provided by medical sources. Thus, on this issue, the ALJ did not provide a germane reason to discount the credibility of an "other" medical source.

**d. Dr. Petersen's opinion**

The Commissioner also argues that the Court should infer from the context of the ALJ's reasoning that the ALJ also relied on a contradiction between Plaintiff's cardiologist, Dr. Ronald Petersen, M.D., and Dr. Imhof as a further reason why the ALJ gave little weight to Dr. Imhof's opinion. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the paragraph discussing [one doctor's] findings and opinion, and draw inferences relevant to [another doctor's] findings and opinion, if those inferences are there to be drawn."); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that an inconsistency with medical evidence is a germane reason to reject testimony (citing *Lewis*, 236 F.3d at 511)). The Commissioner argues that by mentioning the lack of objective evidence in the entire file in a transition sentence between the paragraphs discussing Dr. Petersen and Dr. Imhof, the ALJ provided sufficient reasoning to allow the Court to draw the inference that the ALJ was using Dr. Peterson's records to discredit Dr. Imhof. AR 20 ("The file does not contain objective evidence of hip, back, or knee limitations before the date last insured.").

The Court rejects the Commissioner's argument for three reasons. First, the Court does not read the transition sentence as an inference by the ALJ that he was relying on an inconsistency with Dr. Petersen to discredit Dr. Imhof. Thus, this is an improper *post-hoc* rationalization. *Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947))).

Second, to the extent that the ALJ may have intended to imply such a reason to discredit Dr. Imhof, the Court has already found that the ALJ's conclusion that the record did not contain

objective evidence of a hip and back impairment is in error. Thus, such an inference, even if it could be drawn, would not be legitimate because it relies upon an incorrect assumption.

Third, as Plaintiff points out, Dr. Petersen's opinion addresses Plaintiff's cardiac health and its impact on his ability to work, not Plaintiff's hip, back, or knee issues. *See* AR 376 (commenting that his practice is limited to cardiology and describing Plaintiff's exertional limitations as "cardiac limitations"). This is not a case of "conflicting medical viewpoints[,]" but one in which differing opinions "are not drawn from the same facts." *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987) (quotation marks omitted). The Court finds that the Commissioner's argument that the ALJ discounted Dr. Imhof's opinion because it conflicted with Dr. Petersen's opinion is without merit.

Because the ALJ provided at least one germane reason for discounting Dr. Imhof's testimony, however, the ALJ's determination on this point is upheld.

**C. Plaintiff's Ability to Perform Past Relevant Work**

Plaintiff next argues that the testimony of the VE had no evidentiary value and that the ALJ's reliance upon it in concluding that Plaintiff could perform past relevant work was reversible error. When posing a hypothetical question to a VE, the ALJ's "depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. "'The testimony of a [VE] is valuable only to the extent that it is supported by medical evidence' and has 'no evidentiary value if the assumptions in the hypothetical are not supported by the record.'" *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (alteration in original) (quoting *Magallanes*, 881 F.2d at 756). "Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'" *Lewis*, 236 F.3d at 517 (quoting *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). Dr. Imhof expressed his opinion that Plaintiff had greater limitations than the ALJ presented to the VE. Because the

ALJ provided a germane reason to discount Dr. Imhof's testimony, however, the hypothetical question put to the VE was adequate. Accordingly, the ALJ's finding that Plaintiff could perform past relevant work is supported by substantial evidence.

## CONCLUSION

The Commissioner's decision is based on substantial evidence in the record, and the ALJ's decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 31st day of May, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge